UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEOFFREY N. FIEGER, *et al*,

        Plaintiffs,

                                   CASE NO. 05-CV-73891-DT
vs.                               HON. LAWRENCE P. ZATKOFF

MICHAEL A. COX, *et al.*,

        Defendants.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron, State of
Michigan, on the _____ day of December, 2006.

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I.  INTRODUCTION

This matter is before the Court on the following substantive Motions: (1) Plaintiffs' Motion for Declaratory Judgment (Docket #6), (2) Plaintiffs' Motion for Declaratory Judgment (Docket #7), (3) Motion to Dismiss filed by Michael A. Cox and Thomas J. Cameron (Docket #8), (4) Motion to Dismiss filed by Stephen Markman (Docket #15), (5) Motion for Sanctions filed by Stephen Markman (Docket #16), and (6) Motion to Dismiss filed by Terri Lynn Land, Doug Baker and Donovan Motley (Docket #40).  The relevant parties have filed their responses and replies, or the period for filing the same has expired.  On September 27, 2006, the Court heard oral arguments on all of the Motions, except for the Motion to Dismiss filed by Terri Lynn Land, Doug Baker and Donovan Motley, which Motion was filed subsequent to the hearing.  With respect to the most

recent Motion to Dismiss filed by Terri Lynn Land, Doug Baker and Donovan Motley, the facts and legal arguments are adequately set forth in the briefs submitted.[1]   Moreover, finding that the determination of the issues with respect to that most recent Motion to Dismiss will not be aided by oral argument (especially as most of the issues therein were addressed at the hearing with respect to other defendants), and pursuant to E.D. Mich. Local R. 7.1(e), this Court has decided that Motion to Dismiss upon the briefs submitted, without this Court entertaining further oral arguments.  For the reasons that follow, all of the Motions to Dismiss are GRANTED, Defendant Stephen Markman's Motion for Sanctions is GRANTED, and Plaintiffs' cause of action is hereby DISMISSED.

## II. BACKGROUND

### A.    Parties

The Plaintiffs in this action are Geoffrey Fieger ("Fieger"), his law firm (Fieger, Fieger, Kenney & Johnson, P.C., hereinafter the "Law Firm"), John Barlow, his advertising firm (J.L. Barlow & Associates Advertising, Inc., hereinafter the "Advertising Firm"), Bill Miller and Nancy Fisher.

The named Defendants are Michael Cox (individually and in his capacity as Attorney General of Michigan), Stephen Markman (individually), Terri Lynn Rand (individually and in her capacity as Michigan Secretary of State), Thomas Cameron (individually and in his capacity as deputy Attorney General of Michigan), Doug Baker (individually and in his capacity as Special

---

[1] In conjunction with its response brief to the Motion to Dismiss filed by Terry Lynn Land, Doug Baker and Donovan Motley, Plaintiffs filed a Motion for Leave to Exceed Page Limit (Docket #41).  Such Motion is GRANTED.

Assistant Attorney General of Michigan), Donovan Motley (individually and in his capacity as a Special Agent of the Criminal Division of the Attorney General of Michigan), Maura Corrigan (individually) and John Corrigan (individually).  Defendants Maura Corrigan and John Corrigan were never served, and the Plaintiffs previously voluntarily dismissed this cause of action against both of them.

**B.      General History**

In the weeks preceding the 2004 general election, a group identified as Citizens for Judicial Reform ("CJR") ran commercial advertisements urging the electorate not to re-elect Defendant Stephen Markman ("Markman"), a Justice of the Michigan Supreme Court.  On October 28, 2004, Dan Pero ("Pero") filed a complaint with the Secretary of State alleging that CJR had violated provisions of the Michigan Campaign Finance Act (the "Act").[2]  Without notice or action by the Secretary of State, however, CJR took action to come into compliance with the alleged violations on October 27, 2004.  The Secretary of State subsequently notified CJR that the complaint had been filed by Pero.  In late November, 2004, the Secretary of State notified Pero that it considered the matter resolved.

After CJR failed to file a required January Triannual 2005 Report with the Secretary of State, the Secretary of State provided notice to CJR (through its agent) of such failure on more than one occasion.  CJR never responded to those notices.  On March 16, 2005, after having not received any response from CJR with respect to CJR's failure to file required documents, an employee of the

---

[2]Contrary to the claims of Plaintiffs, Pero's complaint does not indicate in any manner that Barlow or the Advertising Firm failed to comply with the Act.  Pero's complaint indicates that the Advertising Firm acted as the agent for CJR and placed ads for CJR, but it does not allege any wrongdoing by any of the Plaintiffs, including John Barlow or the Advertising Firm.

3

Secretary of State's Office referred the matter to the Attorney General.  The referral requested the Attorney General's assistance in bringing CJR into compliance with disclosure requirements of the Act and "prosecuting those who have ignored the law to the fullest extent possible."

On May 31, 2005, CJR finally filed its January 2005 Triannual Report.  Therein, CJR disclosed anonymous contributions totaling $457,163.65 and expenditures in the same amount for television advertisements opposing the 2004 candidacy of Markman.  On June 1, 2005, CJR filed an amended January 2005 Triannual Report to correct an administrative error in its May 31 report.[3] On June 14, 2005, CJR filed another amended January 2005 Triannual Report, this time to remove the $457,163.65 in anonymous contributions and expenditures (*i.e.*, the report indicated that there had been no contributions to or expenditures by CJR).  The Secretary of State sent a Notice of Error or Omission to CJR on July 8, 2005, asking for an explanation regarding the anonymous contribution and expenditures.  Subsequently, CJR failed to timely file its July 2005 Triannual Report.  Notices of such failure were sent by the Secretary of State to CJR on July 29, 2005, and August 25, 2005.

In the meantime, on June 10, 2005, Fieger filed a late Independent Expenditure Report ("IER") with the Oakland County Clerk's Office.  Fieger's IER reflected expenditures that he made as an individual in connection with the 2004 Supreme Court election involving Markman. The IER specified expenditures paid to the Advertising Firm for media advertising between October 20, 2004 and November 1, 2004, with the total expenditures of $453,686.35.

## C.    State Court Proceedings

---

[3]  The May 31 report still listed Herb Charbenau as the Treasurer, even though he had been replaced by Bill Miller (now a Plaintiff in this action).  Otherwise, the amended report disclosed the same amount of anonymous contributions and expenditures.

By July 2005, an investigation regarding the contributions of Fieger and/or the Law Firm was underway. A search warrant had been obtained and executed on Comerica Bank to seize checks of the Law Firm and Fieger. Copies of 11 checks were seized. At about the same time, a search warrant was obtained and served on Barlow and the Advertising Firm. In October 2005, pursuant to the Investigative Subpoena Act, a *subpoena duces tecum* was served on Fisher (as the bookkeeper of the Law Firm) to appear and give testimony and produce records of the Law Firm regarding payments to the Advertising Firm. All of these searches and subpoenas were conducted out of the 54-B Judicial District in Ingham County, Michigan, pursuant to a matter titled "In the Matter of the Investigation of: Campaign Expenditures Made by or for 'Citizens for Judicial Reform' Concerning the 2004 Election for the Michigan Supreme Court" (hereinafter, the "District 54-B Case").

Two pertinent appeals to the Ingham County Circuit Court were filed by state actor defendants in relation to the District 54-B Case: (a) an action in mandamus, *Geoffrey N. Fieger, et al. v. Michael A. Cox, et al.*, C.A. No. 05-1216-AQ (filed November 3, 2005), and (b) an action for superintending control, *In Re Fieger*, C.A. No. 05-1217-AS (filed December 22, 2005). In both instances, the Circuit Court found in favor of the plaintiffs in that action, and the Attorney General filed interlocutory appeals with the Michigan Court of Appeals. At this time, those appeals remain pending before the Michigan Court of Appeals.

The parties to the District 54-B Case include essentially the same plaintiffs as in this action (less Bill Miller) and essentially the same defendants (less Motley, Markman and the Corrigans). In addition, the issues presented in the District 54-B Case are substantially similar to those before the Court of Appeals. Although all of the pleadings from that action have not been provided to the Court, a copy of the Plaintiffs' original filing of the action in mandamus reveals that many of the

allegations stem from the same matters at issue here (*i.e.*, the CJR expenditures, the complaint filed by Pero, the referral by the Secretary of State to the Attorney General, the search warrants issued out of the 54-B District Court, the use of the Investigative Subpoena Act, and the *subpoena duces tecum* to Fisher) and there are a number of identical issues being litigated in that mandamus action (including Plaintiffs' contentions that the Secretary of State comply with Sections 15(5), (10) and (13) of the Act and that the Secretary of State and others be temporarily and permanently restrained and enjoined from taking further action to enforce Sections 41(1) and (2) of the Act). In the mandamus pleading, Plaintiffs simply asserted that Section 47 of the Act had been declared unconstitutional by the Michigan Attorney General (in 1996) and the U.S. Supreme Court.

In addition to the District 54-B Case, the Attorney General's office appointed Patrick Shannon as a special, independent prosecutor to investigate and prosecute any violations of the Act allegedly perpetrated by Fieger (and/or others). In January 2006, Shannon announced that he would not file criminal charges with respect to the CJR matter. Shannon concluded that while he believed the Act had been violated, he also believed the matter could be better handled as a civil matter by the Secretary of State (rather than the Attorney General).[4]

**D.     Proceedings in this Court**

On October 11, 2005, Plaintiffs filed their initial pleadings. On October 12, 2005, Plaintiffs filed a First Amended Complaint (hereinafter, the "Complaint"). On October 13, 2005, Plaintiffs filed an Application for Temporary Restraining Order. On October 18, 2005, the Court denied Plaintiffs' Application for Temporary Restraining Order.

---

[4]In another matter, the Oakland County Prosecutor determined that a criminal complaint made against Fieger was not supported by sufficient evidence to justify a criminal prosecution and closed the case.

Plaintiffs subsequently filed two motions for declaratory relief, including preliminary and permanent injunctive relief from enforcement of several sections of the Act.  Defendants Cox and Cameron filed a Motion to Dismiss,  Defendant Markman filed a separate Motion to Dismiss, and Defendants Land, Baker and Motley filed a third Motion to Dismiss.  Defendant Markman also filed a Motion for Sanctions, and Defendants Cox and Cameron filed a Motion to Quash Notice of Deposition and for Protective Order.  All of these motions remain pending.

## III.  ANALYSIS REGARDING ABSTENTION

Plaintiffs' application for a TRO and preliminary injunction was denied by this Court in large part because of pending state court actions involving the same and related matters. Plaintiffs themselves have pointed out as much, stating in response to the Court's Order to Show Cause, "The Plaintiffs have been embroiled in extensive, complex litigation in four (4) different courts, arising out of the same transaction."

In *Younger v. Harris,* 401 U.S. 37, 44 (1971), the U.S. Supreme Court first affirmed the need for federal courts to abstain from interfering with ongoing state criminal proceedings. The *Younger* court emphasized that "extraordinary circumstances must be present to justify federal injunctive relief against state criminal prosecutions." *Younger*, 401 U.S. at 46.  Subsequently, the abstention required by *Younger* was extended to civil proceedings in state court. *Huffman, et al. v. Pursue, LTD,* 420 U.S. 592, 595 (1975).  In reaching this conclusion, the *Huffman* court recognized "the component of *Younger* which rests upon the threat to our federal system is thus applicable to a civil proceeding such as this quite as much as it is to a criminal proceeding." *Huffman,* 420 U.S. at 604.  In the context of state appellate proceedings, such as at issue here, the *Huffman* court emphasized

7

the evils of federal court intervention:

> Virtually all of the evils at which *Younger* is directed would inhere in federal intervention prior to completion of state appellate proceedings, just as surely as they would if such intervention occurred at or before trial. Intervention at the later stage is if anything more highly duplicative, since an entire trial has already taken place, and it is also a direct aspersion on the capabilities and good faith of state appellate courts. Nor,..., is federal intervention at the appellate stage any the less a disruption of the State's efforts to protect interests which it deems important.

*Huffman,* 420 U.S. at 608.

The U.S. Supreme Court identified specific factors to be applied by the district court when determining whether abstention is required. Those factors are: (1) whether the underlying proceedings constitute an ongoing state judicial proceeding; (2) whether the proceedings implicate important state interests; and, (3) whether there is an adequate opportunity in the state proceedings to raise a constitutional challenge. *Tindall v. Wayne County Friend of the Court,* 269 F.3d 533, 538 (6th Cir 2001).

As to the first factor, the District 54-B Case is still being litigated and many of the key issues in the Complaint before this Court are the same as those now being litigated in the Michigan Court of Appeals. Secondly, the proceedings here implicate important state interests, including, among others, financing of campaign advertisements, criminal activity related to campaign financing, judicial review of criminal proceedings, (*i.e.*, issuance of search warrants and investigative subpoenas), the regulation of the campaign financing, and the relationship between the Secretary of State and the Attorney General regarding enforcement of possible violations of the Act.

Thirdly, there is an adequate opportunity in the ongoing state proceedings to raise the constitutional challenges presented here. A state court process to challenge the issuance of search

warrants and the seizure of evidence is in place. Plaintiffs could file a motion to quash, they may raise constitutional issues as well as procedural irregularities related to both search warrants and investigative subpoenas, and they have a state court process to challenge the authorization and issuance of investigative subpoenas. MCL 767A.6; *In Re Investigation of March 1999 Riots in East Lansing v. Pastor, et al.,* 463 Mich. 378, 382, 383 (2000); *In re Investigation of Criminal Misconduct in Office v. Riverview School District, et al.,* 2003 Mich.App. LEXIS 3399 *4, *5, Court of Appeals No. 236571 (December 23, 2003).

There are several additional, important aspects to note about the District 54-B Case *vis a vis* the action in this Court. First, the adversarial proceedings (and not just the investigation by the Attorney General) began in the District 54-B Case prior to the Complaint being filed in this case. Second, the issues have been argued, decided and appealed in that case. A decision from the Michigan Court of Appeals is pending. In this federal court action, there has been little resolution of the key issues.

In addition, the filing of an action in the federal district court appears to be an attempt to forum shop or litigate the issues in multiple forums, with the hope that some court will rule in the Plaintiffs' favor. For example, the attestations of the petitioners to the action in mandamus were dated October 17, 2005, the action in mandamus was filed on October 18, 2005 (both of which preceded this Court's decision regarding the application for TRO filed by the Plaintiffs), and the action in mandamus had been heard by the Circuit Court and an interlocutory appeal filed with the Michigan Court of Appeals by November 3, 2005, which was prior to the date any of the Defendants in this matter were served. The Court also notes that Plaintiff did not serve Cox and Cameron, the first two Defendants served in this case, until 30 days *after* the Complaint and Motion for TRO was

filed. The third Defendant served, Markman, was not served until three weeks after that. In fact, when the hearing was held on September 27, 2006 (nearly a year after the Application for TRO was filed), only three named Defendants had been served. Defendants Land, Baker and Motley were served nearly a year later, and only after this Court granted Plaintiffs leave to do so. The excessive delay in serving parties against whom Plaintiff desired injunctive relief clearly demonstrates the focus of the Plaintiffs with respect to the issues at stake here. The Plaintiff's focus was in the state courts, not in this court.

For the reasons described above, the Court finds that the parties (in particular, the Plaintiffs) elected to actively litigate the key issues of this case in the state courts long before, and in more detail than, they have at any time in this Court. More significantly, each of the claims before this Court turns on the constitutionality of Sections 15, 41 and 47 of the Act (a state statute), issues which remain pending in the Michigan Court of Appeals. The Court therefore is reluctant to be the tribunal to resolve the issues presented in this case. Accordingly, the Court concludes that the abstention doctrine compels this Court to abstain from interfering with the related ongoing state court proceedings.

## IV. ANALYSIS OF THE MERITS OF THE MOTIONS

Although the following conclusions of the Court are not binding, the Court believes it is important to explain why the Court would, if it ruled on the merits of Plaintiffs' cause of action: (a) deny Plaintiffs' Motions for Declaratory Judgment, and (b) grant the Motions to Dismiss filed by the Defendants.

### A.    Plaintiffs' Motions for Declaratory Judgment

Plaintiffs ask the Court to enter a judgment holding that the following provisions of the Act violated the First Amendment to the United States Constitution.

1.      **Sections 41(1), 41(2), 47(1) and 47(2) of the Act**

Sections 41(1) and (2) of the Act provide:

(1)      A person shall not make or accept a single contribution of more than $20.00 in cash or make or accept a single expenditure of more than $50.00 in cash.  Contributions of more than $20.00 and expenditures of more than $50.00, other than in-kind contribution or expenditure, shall be made by a written instrument containing the names of the payor and the payee.

(2)      A person shall not accept or expend an anonymous contribution.  An anonymous contribution by a person shall not be deposited but shall be given to a tax exempt charitable organization. The charitable organization receiving the contribution shall provide the person with a receipt.  The receipt shall be retained by the an appropriate committee pursuant to Section 22.

A person who violates Sections 41(1) or (2) commits a misdemeanor (up to 90 days in jail and $1,000 fine for an individual, up to $10,000 for a person other than an individual).

Sections 47(1) and (2) of the Act provide:

(1)      Except as otherwise provided in this subsection and subject to subsections (3) and (4), a billboard, placard, poster, pamphlet, or other printed matter having reference to an election, a candidate, or a ballot question, shall bear upon it the name and address of the person paying for the matter. . . .

(2)      A radio or television paid advertisement having reference to an election, a candidate, or a ballot question  .  .  .  shall bear the name of the person paying for the advertisement. . . .

A person who violates Sections 47(1) or 47(2) commits a misdemeanor (up to 93 days in jail and $1,000 fine for an individual, up to $10,000 for a person other than an individual).

The Court notes that none of the Plaintiffs have been charged with a violation of the Act, under these sections or otherwise.  As such, the Plaintiffs lack standing to challenge the constitutionality of them.  Accordingly, Plaintiffs' Motion for Declaratory Judgment with respect

11

to Sections 41 and 47 would be denied.

**2.      Sections 15(5), 15(10) and 15(13) of the Act**

The second Motion for Declaratory Judgment filed by Plaintiffs asks the Court to rule that the Act confers upon Plaintiffs a federal due process right to exhaustion of administrative remedies prior to commencement by the Michigan Attorney General of any criminal investigation or prosecution. Plaintiffs assert that the following subsections of Section 15 require the Secretary of State to follow certain procedures. Plaintiffs move the Court to order the Secretary of State to adhere to those provisions before taking any action against the Plaintiffs with respect to Sections 41 or 47 of the Act.

> Subsection 5 provides:
>
> > A person may file with the secretary of state a complaint that alleges a violation of this act. Within 5 business days after a complaint that meets the requirements of subsection (6) is filed, the secretary of state shall give notice to the person against whom the complaint is filed. The notice shall include a copy of the complaint. . . .
>
> Subsection 10 provides:
>
> > If the secretary of state determines that there may be reason to believe that a violation of this act has occurred, the secretary of state shall endeavor to correct the violation or prevent a further violation by using such informal methods as a conference, conciliation, or persuasion, and may enter into a conciliation agreement. Unless violated, a conciliation agreement is a complete bar to any further action with respect to matters covered in the conciliation agreement. If the secretary of state is unable to correct or prevent further violation by these informal methods, the secretary of state may refer the matter to the attorney general for the enforcement of a criminal penalty or commence a hearing as provided in subsection (11).
>
> Subsection 13 provides:
>
> > When a report or statement is filed under this act, the secretary of state shall review the report or statement and may investigate an

12

apparent violation of this act under the rules promulgated under this act. If the secretary of state determines that there may be reason to believe that a violation of this act has occurred and the procedures described in subsection (10) have been complied with, the secretary of state may refer the matter to the attorney general for the enforcement of a criminal penalty provided by this act, or commence a hearing under subsection (11) to determine whether a civil violation of this act has occurred.

The Court also would deny Plaintiffs' Motion for Declaratory Judgment with respect to Section 15 of the Act because none of the Plaintiffs have standing with respect to their request. The investigation referred by the Secretary of State's office to the Attorney General was with respect to CJR. The Plaintiffs acknowledge at Paragraph J. on page 4 of their Brief in Support of Motion for Declaratory Judgment with respect to Section 15 of the Act that, "No person ever filed an §(6) complaint with the Defendant Land alleging any violation of the Michigan Campaign Act, against the Plaintiffs, or any of them." As such, CJR is the only "person" who can claim that it was deprived of rights which may be conferred by Sections 15(5), 15(10) and 15(13) of the Act. As the record demonstrates, CJR is not a party hereto. Again, there is no case or controversy at this time because there is no criminal action that has been commenced (or even appears to be pending) with respect to any Plaintiff in this case. Accordingly, Plaintiffs' Motion for Declaratory Judgment with respect to Sections 15(5), 15(10) and 15(13) would be denied.

**B.    Defendants' Motions to Dismiss**

**1.    The Motions**

Cox and Cameron move to dismiss Counts III-VIII, X and XI of Plaintiffs' Complaint. Land, Baker and Motley similarly move to dismiss Counts III-XI of Plaintiffs' Complaint. Markman asserts that Plaintiffs' action should be dismissed against him because (a) Plaintiffs have not sufficiently stated their claims concerning the existence of a conspiracy (or

13

Markman's membership in such conspiracy), and (b) Plaintiffs have failed to sufficiently state their claims that Markman has violated Plaintiffs' federally protected rights. The Defendants' Motions to Dismiss are analyzed as a group below.[5]

**2.      Count III - 42 U.S.C. §1985(3) Claim**

The only Plaintiff to which this Count pertains is Fieger.  Plaintiffs allege that Fieger was subjected to a conspiracy that violated his rights to equal protection under the law.  A claim under 42 U.S.C. §1985(3) requires that a plaintiff allege:

> (1) a conspiracy of two or more persons; (2) that the conspiracy's purpose was to deprive, directly or indirectly, ***a person or class of persons of the equal protection of the laws***; 3) an act in furtherance of the conspiracy; and 4) the act caused injury to the person or property of the plaintiff[s] or a deprivation of any right or privilege of a citizen of the United States.

*Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996) (emphasis added).  Moreover, "[t]o state a claim actionable under this section, a complaint must allege two necessary elements: (1) the existence of a conspiracy, and (2) some 'class-based discriminatory animus behind the conspirators' action.'" *Dunn v. State of Tennessee*, 697 F.2d 121 (6th Cir. 1982) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

In this case, Fieger is a white male.  Plaintiffs' Complaint contains no allegations that Fieger was deprived of equal protection or equal privileges and immunities because of discrimination based upon a constitutionally protected classification (such as race, gender, etc.).  Rather, Plaintiffs allege that Fieger himself constitutes a protected class because he represents and is an "advocate of the

---

[5]"Counts" I and II consist of general allegations and are not causes of action. Count XII (Tortious Interference with Contractual or Business Relationship) alleges wrongful action only by a defendant (Maura Corrigan) who has dismissed.

14

civil, political and economic rights of minority groups" and other persons challenging constitutional issues.  Contrary to Plaintiffs' belief, however, Fieger is not a (or the sole) member of a protected class simply because he expresses his opinion on a variety of political and social issues, or because he criticizes politicians and judicial officers.  Accordingly, the Court would dismiss this Count because of the absence of a constitutionally protected classification.

On a more substantive basis, and in particular as it pertains to Markman, the Court takes notice that allegations of conspiracy under §1985(3) must be pled with sufficient specificity to survive dismissal; broad, conclusory language does not overcome the necessity of factual allegations to support the conspiracy theory. *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984).  In this case, there are nothing but conclusory allegations that Markman had any role in the alleged conspiracy to deprive Fieger of his rights.[6]  There is no allegation of any action by Markman (including even such *de minimis* action as talking to any of the other Defendants).  As such, this Count would be dismissed with respect to Markman for this reason as well.

---

[6]In the Complaint, Markman's name appears only in the following three contexts:

(1)   **Paragraph 23 -** "on a date and at time known to Defendants, but unknown to the Plaintiffs, at present, the Defendants Cox, Cameron, Baker, Land, and Markman, and other person or persons . . . joined, confederated, combined and conspired together for the purpose of depriving the Plaintiff Fieger of certain of his rights, privileges, and immunities guaranteed to him under the Constitution of the United States, including, but not limited to: his First Amendment right to engage in public dialogue and debate regarding political issues of personal concern to him;"

(2)   **Paragraph 25 -** Markman was the target of Citizens' advertisements; and

(3)   **Paragraph 50 -** Markman received campaign contributions in 2000.

### 3.   Count IV - 42 U.S.C. §1983 (First Amendment Rights to Free Speech)

All 1983 claims against Markman would be dismissed because he is being sued in his individual capacity only. Therefore, he can only participate in and be liable for violating someone's right to free speech if he conspired with a state actor to do so. As discussed above, the conspiracy claims *vis a vis* Markman are not pled with sufficient specificity.

As to the remaining Defendants, Plaintiffs do not specify the protected speech at issue which Defendants allegedly deprived Plaintiff. Accordingly, the Court would dismiss this Count for failure to state a claim upon which relief could be granted.

### 4.   Count V and Count X - Fourth Amendment (Illegal Search Warrants)

Plaintiffs allege that the search warrants executed in this case were illegal because they were authorized and issued without probable cause. Plaintiffs point to nothing to support this contention, however, and the record reveals that the converse is true. The search warrants issued in the District 54-B Case were reviewed and approved by a state court judge before being issued. To the extent that Plaintiffs seek to challenge the issuance of such search warrants, the state courts were the proper forum for doing so. The federal district court is not an appellate forum for such matters. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Appeals v. Feldman*, 460 U.S. 462 (1983). For the same reason, Plaintiffs' contention that items taken from the Advertising Firm were beyond the scope of the applicable warrant are not appropriately before this Court, nor is the issue regarding the use of the Investigative Subpoena Act with respect to Fisher. Moreover, the ongoing action in mandamus actually challenges the search of the offices of the Advertising Firm and the Investigative Subpoena Act issues regarding Fisher. Accordingly, for the foregoing reasons, the Court would dismiss Counts V and X of the Complaint.

16

5.      **Count VI - 42 U.S.C. §1983 (Vindictive Prosecution)**

The Sixth Circuit recognizes a limited cause of action for selective enforcement. *Futernick, et al. v. Sumpter Township, et al.*, 78 F.3d 1051, 1056 (6th Cir. 1996). At this time, there is no pending criminal action against Fieger (or any of the other Plaintiffs). Absent a criminal action, there cannot be an action for selective enforcement. In addition, as noted above, the protected class to which Fieger belongs (a necessary element of the claim) is unclear. Therefore, Defendants would be entitled to dismissal of Count VI if the Court were considering the merits of Plaintiffs' action.

6.      **Count VII and Count VIII - Due Process**

Count VII asserts a procedural due process right to have the remedial provisions of Section 15(10) of the Act applied to Plaintiffs before the commencement of any criminal investigation or prosecution. As discussed above, none of the Plaintiffs are charged with a violation of the Act. Second, the provisions of Section 15(10) apply only where a person is subject to the filing requirements of the Act and a complaint is received by the Secretary of State with respect to such person. No complaint was ever filed regarding any of the Plaintiffs in this action. As such, there was no obligation of the Secretary of State to provide any Plaintiff with notice of CJR's failure to satisfy disclosure requirements, and the Court would dismiss Count VII accordingly.

Count VIII asserts that Cox violated his duties as Attorney General to make all prosecutorial decisions based solely on the public good because he engaged in a scheme to pursue a vindictive investigation against Fieger, without reason to believe that Fieger had violated any law. In the Fourth Amendment context, the Supreme Court has ruled that where government actors are alleged to have committed wrongs, claims need to be brought under specific constitutional

17

provisions rather than under substantive due process standard. *Graham v. Connor*, 490 U.S. 386 (1989). As Plaintiffs failed to do so here, the Court would dismiss Count VIII.

7.     **Count IX - Right to Counsel under 6th and 14th Amendments**

This claim pertains only to Fisher, who alleges that Baker interfered with her right to counsel by filing a Motion to Compel Answers and Production of Records and Documents with respect to Fisher. In the Motion to Compel, Baker advised the court of the potential conflict of interest with Fisher's attorney, *i.e.*, that the attorney also represented Fieger and the Law Firm, that Fieger and the Law Firm were potential defendants, and that the attorney would be representing potential defendants and a witness who was employed by the potential defendants. Baker also advised the court that the attorney would oppose any effort to remove him as counsel. The court's Order entered October 12, 2005, ordered Fisher to appear with the specified documents and further indicated the court would determine the validity of her objections and whether the request of the State of Michigan was appropriate and within the scope of the applicable law.

The Court finds that Plaintiff's argument related to an alleged interference with her counsel is without merit. The Sixth Amendment right to counsel attaches only upon the initiation of judicial proceedings against an individual. *Michigan v. Jackson,* 475 U.S. 625, 629 (1986); *Brewer v. Williams,* 430 U.S. 387, 398 (1977). Fisher also had no Fifth Amendment right to counsel under these facts because such rights first arise when an individual is subject to custodial interrogation. *Edwards v. Arizona,* 451 U.S. 477, 484, 485 (1981); *Miranda v. Arizona,* 384 U.S. 436, 474 (1966). At best, Fisher had a statutory right to counsel under the Investigative Subpoena Act, as a result of the Motion to Compel filed by Baker. *See* M.C.L. §767A.5(3). For the reasons discussed above in Section III, the challenge to this state statutory right is not appropriately before this Court. Even if

18

it was, the actions of Baker appear to be authorized when the recipient of the investigative subpoena fails to appear in court.

### 8.      Count XI - Equity

For the reasons stated above, there is no reason to grant Plaintiffs any relief on the basis of equity.

## C.      Motion to Quash Notice of Deposition and for Protective Order

The Motion to Quash Deposition and for Protective Order filed by Cox and Cameron is DISMISSED AS MOOT.

## D.      Motion for Sanctions

Markman filed a motion asking the Court to assess sanctions pursuant to Fed. R. Civ. P. 11, including expenses and reasonable attorneys' fees incurred by Markman in relation to this action. Markman cited the following reasons: (1) the Complaint was filed for the purposes of harassing Markman and causing needless expense in defending the matter; (2) the factual contentions of the Complaint do not and will not have evidentiary support; and (3) Plaintiffs have engaged in conduct against Markman that demonstrates an abuse of the legal process.

As noted above, the Court found Plaintiffs' action against Markman to be wholly lacking in merit. The Complaint is devoid of any allegations, let alone facts, to support Markman's alleged participation in a conspiracy against Fieger and/or the other Plaintiffs. The Court agrees with Markman's contentions that the Plaintiffs' claims against Markman are spurred solely by Plaintiffs' political and professional animus toward Markman. The filing of a meritless, factually deficient and speculative action such as the instant action against Markman was not appropriate or reasonable, nor will this Court tolerate its filing or ignore the ramifications to Markman (financial and otherwise)

19

that resulted from Plaintiffs' filing this action against Markman.

Accordingly, for the reasons set forth above and for the reasons set forth in Markman's Brief in Support of Motion for Rule 11 Sanctions, the Court concludes that Rule 11 sanctions are appropriate in this case. Therefore, Markman's Motion for Rule 11 Sanctions is GRANTED. The Court hereby ORDERS Markman to submit to the Court, within 30 days of the date of this Order, a detailed invoice of the legal fees and expenses incurred by Markman in relation to this matter.

The imposition of Rule 11 sanctions in this matter is not against Plaintiffs' current counsel, however, as he filed an appearance only recently. Rather, the imposition of Rule 11 sanctions and the findings of the Court with respect to the inappropriateness of the present action against Markman apply to, and shall be paid by, Plaintiffs' initial counsel. Plaintiffs' initial counsel was responsible for filing the present action against Markman and was the counsel for Plaintiffs when Markman's Motion for Rule 11 Sanctions was filed and for a period of eight months thereafter.

## V.  CONCLUSION

Accordingly, and for the reasons stated above, all of Defendants' Motions to Dismiss are GRANTED, Defendant Stephen Markman's Motion for Sanctions is GRANTED, and the Motion to Quash filed by Cox and Cameron and Plaintiffs' Motions for Declaratory Judgment are DISMISSED AS MOOT. Moreover, Plaintiffs' cause of action is hereby DISMISSED. Judgment shall be entered accordingly.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff                    
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  December 8, 2006

20

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on December 8, 2006.

S/Marie E. Verlinde_____
Case Manager
(810) 984-3290